UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROGELIO CRUZ JR.,
Plaintiff,

-v-

AMERICAN EXPRESS NATIONAL BANK,
Defendant.

25-CV-9951 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Rogelio Cruz Jr.,[1] proceeding *pro se*, brings this action against Defendant American Express National Bank ("American Express" or "Amex"), asserting claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1218 *et seq.*, 42 U.S.C. § 1981, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as well as common-law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 1.) Before the Court is American Express's motion to dismiss the complaint. (ECF No. 64.) For the following reasons, the motion is granted.

## I. Background

The following facts are drawn from Cruz's complaint and are presumed true for the purposes of this opinion. (*See* ECF No. 1 ("Compl.").) Since Cruz proceeds *pro se*, the Court also considers the allegations included in his opposition to Amex's motion to dismiss. (ECF No. 71 ("Opp.").)[2] *See Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452, at

[1] It appears that Plaintiff now goes by the name "thul'ruuk." (*See* ECF No. 81 at 1.) For clarity, however, the Court refers to Plaintiff by his name on the docket.

[2] Though Cruz filed a motion to file an amended complaint on January 26, 2026 (ECF No. 18), he never filed an amended complaint, despite Judge Ricardo's order explaining that he was entitled to do so as a matter of right and directing him to do so by February 10, 2026 (ECF No. 20), with a reminder issued on February 4, 2026 (ECF No. 23). On February 24, 2026, Cruz

*1 n.3 (S.D.N.Y. Sep. 28, 2022) ("[T]he Court's mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's additional materials, such as his opposition memorandum." (cleaned up)). All reasonable inferences are drawn in Cruz's favor. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

Cruz is a United States Marine Corps veteran who has received a 100% disability rating from the United States Department of Veterans Affairs, meaning that he is "totally and permanently disabled due solely to [his] service-connected disabilities" as of January 23, 2022. (Compl. ¶¶ 15-17.) Due to his disability, Cruz requires written, asynchronous communication instead of chat- or telephone-based communication, so that he can process information at his own pace, maintain written records, and communicate effectively. (*Id.* ¶¶ 18-19.)

---

filed a "Notice to Defendant's Counsel and Formal Settlement Demand," which appears to reference additional claims under the Rehabilitation Act of 1983, 29 U.S.C. § 794, and the Fifth Amendment Due Process Clause, as well as of intentional infliction of emotional distress, negligence, negligence per se, and civil conspiracy. (*See* ECF No. 33 at 4, 8.) But because neither this filing, nor Cruz's complaint or his opposition to the motion to dismiss, contain factual allegations to support these additional claims, the Court cannot assess them—even while construing Cruz's pleadings liberally in light of his *pro se* status. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006 ("[W]e cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest." (cleaned up)). To the extent that Cruz's allegations regarding his failure to accommodate claim under the ADA would support a claim under the Rehabilitation Act, the portion of this Opinion and Order disposing of his ADA claim apply with equal force to any Rehabilitation Act claim. *See Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995) ("[T]he term ['reasonable accommodation'] is to be interpreted in the same way with respect to both the ADA and the Rehabilitation Act.").

On February 14, 2026, Cruz then filed additional motions to amend the complaint. (ECF Nos. 29, 30.) Judge Ricardo again explained that he was entitled to do so pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure and accordingly granted this motion in part, allowing him to file an amended complaint. (ECF No. 31.) Yet once again, Cruz failed to file an amended complaint, and American Express has not been served with any pleading other than the complaint. (*See* ECF No. 65 at 12.) Accordingly, this Court proceeds based on the original complaint and his opposition to the motion to dismiss.

In or around 2025, severe flooding in Central Texas affected Cruz's agricultural business. (*Id.* ¶¶ 20-21.) Accordingly, Cruz, an Amex cardmember, requested in July 2025 that Amex enroll him in its Financial Relief Program ("FRP"). (*Id.* ¶ 22.) He further requested that he be permitted to enroll in the FRP via email because of his disability. (*Id.* ¶ 23.)

On August 1, 2025, Amex informed Cruz via letter that he had been successfully enrolled in Amex's Event Assistance Program on July 18, 2025. (*Id.* at 18; Opp. at 3.) The letter further informed him that, "[f]or additional hardship consideration requests, enrollment in the American Express Financial Relief Program must be completed only via chat, online or by calling us" by phone, rather than via email. (Compl. at 18; Opp. at 3.) The letter included instructions for Cruz to enroll in the FRP via his online Amex account. (Compl. at 18.)

On August 14, 2025, Amex sent another letter to Cruz reiterating that enrollment in the FRP could be "completed only via chat, online or by calling." (*Id.* at 15.) The letter clarified that enrollment via email was not possible given Amex's need "to communicate . . . in real-time regarding the various plans and provide . . . the relevant information, depending on [Cruz's] responses." (*Id.*) The letter further requested that, to the extent Cruz believed he was "not able to utilize any of the available channels for enrollment due to [his] disability," he could "explain how [he was] limited in using these channels as compared to email." (*Id.*; Opp. at 4.)

Prior to initiating this action, Cruz filed administrative complaints with various federal and state agencies regarding Amex's response to his request to enroll in the FRP via email. (Compl. ¶¶ 31-32.) Cruz also filed a complaint "with the Texas Attorney General's Consumer Protection Division," through the Texas Attorney General's online portal system, "alleging false/misleading statements, failure to deliver goods/services, and contract disputes/breach of contract." (*Id.* ¶ 32; *id.* at 21-24.) After these filings, Cruz began receiving calls from Amex

approximately five or more times per day, and Amex did not leave any voicemails after Cruz failed to pick up these calls. (*Id.* ¶¶ 35-38.)

Cruz then filed the complaint in this action on November 25, 2025. (Compl.) Amex moved to dismiss on April 20, 2026 (ECF Nos. 64), along with an accompanying memorandum of law (ECF No. 65). Cruz filed his opposition to the motion to dismiss on April 28, 2026 (Opp.), and Amex filed its reply on May 12, 2026 (ECF No. 76).

## II. Legal Standard

Cruz proceeds *pro se*. Although "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," a *pro se* complaint must nonetheless "state a plausible claim for relief." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

Federal Rule of Civil Procedure 8 lays out the minimum requirements for a plausible claim for relief. Rule 8(a)(2) requires a plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) further provides that "[e]ach allegation must be simple, concise, and direct." Despite the liberal construction afforded to *pro se* complaints, "[d]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Paul v. Bailey*, No. 9-CV-5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010), *report and recommendation adopted*, No. 9-CV-5784, 2010 WL 3292672 (S.D.N.Y. Aug. 18, 2010).

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complainant must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though a complainant "does not need detailed factual allegations" to survive a motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint is properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The Court must accept all well-pleaded factual allegations as true, but need not accept do the same for "mere conclusory statements." *Id.* at 678-79.

## III. Discussion

Even while construing Cruz's pleadings with the "special solicitude" afforded to *pro se* complaints, *Triestman*, 470 F.3d at 475, the Court concludes that Cruz's allegations do not plausibly allege any actionable violations of his rights.

### A. ADA

"Title III of the ADA prohibits discrimination against individuals with disabilities 'in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 367 (S.D.N.Y. 2022) (quoting 42 U.S.C. § 12182(a)). To state a claim under that provision, a plaintiff must plausibly allege (1) "that [he] is disabled within the meaning of the ADA"; (2) that the defendant "own[s], lease[s], or operate[s] a place of public accommodation"; and (3) that the defendant "discriminated against [the plaintiff] by denying [him] a full and equal opportunity to enjoy the services [the] defendant[] provides." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(a)). A plaintiff may satisfy the third element by alleging that a defendant intentionally discriminated against him or failed to reasonably accommodate a disability. *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (summary order).

It is unclear whether Cruz satisfies the first prong of this test. Under the ADA, a person with a disability is someone who has "a physical or mental impairment that substantially limits one or more major life activities"; has "a record of such an impairment"; or is "regarded as having such an impairment . . . whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(A)-(C), 12102(3). Though Cruz alleges that he is a 100% service-disabled veteran, that rating does not necessarily establish that he meets this standard. "A VA disability rating, based on quantifying a decrease in a veteran's earning capacity, has been recognized as a completely different standard than that imposed by the ADA, and the two are not interchangeable." *Shepherd v. Buffalo Psychiatric Ctr.*, No. 5-CV-563C, 2009 WL 5042629, at *3 (W.D.N.Y. Dec. 15, 2009). Cruz then offers mostly conclusory allegations about the impairments he experiences, specifying which of his major life activities are limited but not which conditions are responsible. He alleges that his "service-connected disabilities substantially limit major life activities including but not limited to communication, concentration, and neurological functions" and that he "requires email-based communication rather than telephone or real-time chat interface" as a "reasonable accommodation" for these disabilities. (Compl. ¶¶ 12, 18.) But Cruz does not include any allegations as to what, exactly, his disabilities are—let alone how they result in these impairments or why email-only communication constitutes a reasonable accommodation. That said, the ADA as amended in 2008 directs courts to construe the term disability "in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [ADA]." 42 U.S.C. § 12102(4)(A). Combined with Cruz's *pro se* status, the Court assumes for purposes of this opinion that he has a disability under the meaning of the ADA.

A second threshold question is whether Amex's services to Cruz here are subject to Title III at all. Courts are divided as to whether digital business operations constitute places of public accommodation under Title III. *Compare, e.g.*, *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010-11 (6th Cir. 1997) (concluding that Title III does not include "within its purview entities other than physical places"), *with Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (holding that "[t]he core meaning of [Section 12181(7)] is that the owner or operator of a store, . . . Web site, or other facility" is subject to Title III). While the Second Circuit has not addressed whether "public accommodation" extends to online services for purposes of Title III, "a closely analogous Second Circuit decision, however, strongly suggests that it does." *Del-Orden v. Bonobos, Inc.*, No. 17-CV-2744, 2017 WL 6547902, at *5 (S.D.N.Y. Dec. 20, 2017) (citing *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000)). In holding that Title III applies to insurance underwriting practices, no matter where the underwriting takes place, the Second Circuit explained in *Pallozzi* that "Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods, [and] services . . . of any place of public accommodation,' suggests to us that the statute was meant to guarantee them more than mere physical access." 198 F.3d at 32 (citation omitted). Critically, the *Pallozzi* court rejected the argument that "Congress intended the statute to ensure [only] that the disabled have *physical* access to the facilities of insurance providers." *Id.*

District courts within this Circuit—including this one—have often taken *Pallozzi* to suggest suggesting that "places of public accommodation" can be read to extend beyond physical locations, such as to Internet-based services. *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077, 2019 WL 6916098, at *2 (S.D.N.Y. Dec. 19, 2019) (concurring with other district courts within this Circuit "that websites qualify as places of public accommodation under the

ADA"); *Del-Orden*, 2017 WL 6547902, at *9 (concluding that the tools of statutory interpretation "strongly support construing the term 'public accommodation' to apply to commercial marketplaces, including on the Internet, whether or not these marketplaces take a conventional physical form"); *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 343 (S.D.N.Y. 2023) ("The cases in this district that have extended Title III protections to stand-alone websites rely on an analogous Second Circuit decision, *Pallozzi*.").

"The Court sees no reason to depart from its holding in *Thorne*." *Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589, 2021 WL 2012512, at *3 (S.D.N.Y. May 20, 2021). "Applying the ADA to today's ubiquitous world of e-commerce . . . vindicates Congress's intent that the ADA remedy discrimination against the disabled in all aspects of society." *Id.* (quotation marks omitted). Additionally, the digital services offered by Amex at issue in this dispute are connected to Amex's physical locations, making it even less difficult to conclude that they qualify as a place of public accommodation for purposes of Title III. While "the vast majority of courts in this circuit have held that commercial websites qualify as places of public accommodation independent of a nexus to a physical space," *Monegro v. I-Blades, Inc.*, No. 21-CV-3093, 2023 WL 2499718, at *3 (S.D.N.Y. Mar. 14, 2023), at minimum they "have generally concluded that a website does qualify" "when the [web]site in question serves as an adjunct to a brick-and-mortar business," *Martinez v. MyLife.com, Inc.*, No. 21-CV-4779, 2021 WL 5052745, at *3 (E.D.N.Y. Nov. 1, 2021).

Accordingly, Cruz's failure to accommodate claim turns on whether Amex offered him a reasonable accommodation for his disability. (*See* Compl. ¶¶ 43-53.) To state this claim, a plaintiff must show "(1) []he suffers from a disability (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the

defendant refused the accommodation." *Davis v. Wild Friends Foods, Inc.*, No. 22-CV-4244, 2023 WL 4364465, at *7 (S.D.N.Y. July 5, 2023). Determining whether a proposed accommodation is reasonable is a "fact-specific, case-by-case inquiry that considers . . . the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.'" *Manuel v. New York*, No. 18-CV-11820, 2020 WL 5775271, at *4 (S.D.N.Y. Sep. 28, 2020) (quoting *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995)).

Though Cruz has alleged he suffers from a disability that he made known to American Express, he has not plausibly alleged that American Express refused to provide him a reasonable accommodation. Absent more allegations about the disability or disabilities from which Cruz suffers, it is impossible for the Court to evaluate the reasonableness of his request for enrollment in the FRP exclusively by email communication (rather than via online portal, online chat, or telephonic communication). But even per Cruz's own description of his required accommodation—"written, asynchronous communication"—American Express offered him an option that would qualify: enrollment via online form, instructions for which were included in the August 1, 2025 letter it sent him. (Compl. ¶¶ 18, 25, 27; *id.* at 18.) Cruz does not dispute that this option is both a written and an asynchronous method of enrollment; he instead simply alleges that he requires exclusively email-based communication. (*Id.* ¶¶ 12, 18.)

Cruz's apparent preference for email over online enrollment is not enough to establish a failure to accommodate claim. The ADA does not require public accommodations to "provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012); *see also Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 65 (2d Cir. 2021) ("Title III entities are not obligated to honor an

individual's choice of aid."). Instead, it merely "requires that a defendant provide a plaintiff with an accommodation that is 'reasonable' and permits the plaintiff to participate equally in the good, service, or benefit offered." *McInerney v. Rensselaer Polytechnic Inst.*, 977 F. Supp. 2d 119, 125 (N.D.N.Y. 2013), *aff'd*, 583 F. App'x 17 (2d Cir. 2014) (summary order). Cruz provides no reason as to why online enrollment would not reasonably accommodate his disability or disabilities and permit him to participate equally in FRP enrollment. While telephonic conferences are neither written nor asynchronous, and even assuming an online chat function may be insufficiently asynchronous for Cruz's needs, online enrollment is both written and asynchronous. Cruz's silence on this front, even when construing his claim liberally in light of his *pro se* status, means he has failed to state a failure-to-accommodate claim. *See, e.g.*, *Plummer v. N.Y. Prop. Ins. Writing Ass'n*, No. 20-CV-4805, 2023 WL 3304811, at *6 (S.D.N.Y. May 8, 2023) (dismissing *pro se* plaintiff's failure-to-accommodate claim where "Plaintiff [was] silent regarding . . . why her disability would impede her from effectively communicating . . . through those other methods" offered); *Tillman v. N.Y.C. Dep't of Hum. Res. Admin.*, No. 20-CV-1153, 2022 WL 874947, at *4 (S.D.N.Y. Mar. 24, 2022) ("Plaintiff's ADA claim fails" to survive a motion to dismiss "because she does not explain why the [other options offered] were not reasonable accommodations"), *aff'd*, No. 22-CV-872, 2023 WL 2770218 (2d Cir. Apr. 4, 2023).

**B. Section 1981**

Cruz also fails to state a claim under 42 U.S.C. § 1981. To state a claim under Section 1981, a plaintiff "must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020). Specifically, she must allege that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the

defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Brevil v. Cnty. of Rockland*, No. 15-CV-5103, 2017 WL 4863205, at *8 (S.D.N.Y. Oct. 26, 2017) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).

Though Cruz alleges that he is Hispanic, he does not allege that Amex's denial of his request for enrollment in the FRP by email was motivated by an intent to discriminate on the basis of his race. His complaint contains no allegation of race discrimination. Instead, he appears to allege discrimination solely on the basis of his disability. Indeed, Cruz frames his comparators for purposes of his Section 1981 claim as "non-disabled individuals," not non-Hispanic individuals, and he argues that Amex's "conduct was . . . motivated by discriminatory animus towards persons with disabilities," not by animus toward Hispanic individuals. (Compl. ¶¶ 59-60.) Cruz therefore fails to state a claim under Section 1981, which does not apply to disability discrimination. *See, e.g.*, *Belanger v. N.Y. Univ.*, No. 21-CV-1644, 2025 WL 963308, at *13 (S.D.N.Y. Mar. 31, 2025) ("[T]he claims brought pursuant to Section 1981 fail because the conduct . . . relates solely to Plaintiff's disability discrimination claim and Section 1981 does not apply to disability discrimination."), *appeal dismissed* (Sep. 16, 2025); *Baptiste v. City Univ. of N.Y.*, 680 F. Supp. 3d 415, 425 (S.D.N.Y. 2023) ( "Section 1981 applies only to race-based [discrimination], not to disability-based [discrimination].").

If Cruz was intending to argue discrimination under the ADA, rather than under Section 1981, he also fails to state a claim. To state a claim of discrimination under Title III of the ADA, a plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the

defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012).

While the first two elements are discussed above with respect to Cruz's failure-to-accommodate claim, Cruz's conclusory allegations of discrimination do not suffice under the third to support a plausible claim. Cruz's first relevant allegation here is a failure to accommodate claim, not a claim of discrimination, since he alleges that the discrimination in question is Amex's "categorically denying Plaintiff's accommodation request." (Compl. ¶ 59.) He further alleges that Amex "impos[es] discriminatory barriers to program enrollment" that therefore deny him "the same right to make and enforce contracts enjoyed by non-disabled individuals" (*id.*), but to the extent he argues the "barriers" at issue are discriminatory because they do not accommodate his need for email-only communication, such a claim still reduces to a failure-to-accommodate claim. Finally, Cruz alleges that "AMEX's conduct was intentional and motivated by discriminatory animus toward persons with disabilities," but this allegation is purely conclusory. (*Id.* ¶ 60.) "Even in a *pro se* case, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Rush v. Fischer*, 923 F. Supp. 2d 545, 549 (S.D.N.Y. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)), *aff'd sub nom. Rush v. Canfield*, 649 F. App'x 70 (2d Cir. 2016) (summary order)). Cruz offers no further allegations about, for instance, specific non-disabled comparators who were granted the ability to enroll in the FRP via email, nor statements or other communications by Amex that indicated animus toward individuals with disabilities. Cruz thus fails to state a claim for disability discrimination under Title III of the ADA.

### C. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

Cruz also fails to plausibly state a claim for breach of contract. To state this claim, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the

contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Arnell Constr. Corp. v. N.Y.C. Sch. Constr. Auth.*, 144 A.D.3d 714, 715 (2d Dep't 2016). Moreover, the "complaint must allege the specific provisions of the contract upon which the claim is based." *Manes v. JPMorgan Chase Bank, N.A.*, No. 20-CV-11059, 2022 WL 671631, at *7 (S.D.N.Y. Mar. 7, 2022).

Cruz has not adequately alleged the specific provisions of the contract that he believes Amex violated here.[3] He alleges that "AMEX's cardmember agreements and public representations create contractual obligations to provide hardship accommodations and to comply with applicable law, including the ADA," but attaches no specific agreement or public representation, let alone points to which provisions contain these terms. (Compl. ¶ 64.) To the extent this claim is based on Amex's contractual promise to comply with the ADA, the underlying merits of those claims are addressed above. To the extent it is based on a contractual obligation to provide hardship accommodations (or a different contractual obligation), Cruz does not identify any specific provision that would allow this Court to assess whether Amex has violated its contractual obligations to him. Even Amex's "public representations" regarding the FRP do not indicate what this contractual provision might be. *See generally Financial Relief Program*, American Express, https://global.americanexpress.com/financial-relief [https://perma.cc/J2G6-2X68]. While the Court construes this claim liberally given Cruz's *pro se* status, the Court cannot save a breach of contract claim where there is no contractual term to evaluate. *See, e.g.*, *Phillips v. Google LLC*, No. 24-CV-5742, 2025 WL 1795894, at *3-4

[3] Moreover, in his complaint to the Texas Attorney General, which is attached to the complaint, Cruz indicated that he had not signed a contract with Amex at all. (Compl. at 22.)

(S.D.N.Y. June 30, 2025) (dismissing *pro se* plaintiff's breach of contract claims for failure to identify terms that were allegedly breached).

Because Cruz "fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated," his breach-of-contract claim is "too vague and indefinite" to survive Amex's motion to dismiss. *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (cleaned up). Since he offers no other allegations specific to his claim of breach of the implied covenant of good faith and fair dealing (*see* Compl. ¶¶ 62-67), that claim fails for the same reasons. *See Negrete*, 187 F. Supp. 3d at 470 (a claim of breach of implied covenant good faith and fair dealing "will not stand if it is duplicative of a breach of contract claim").

**D. TCPA**

Finally, Cruz also fails to state a claim under the TCPA. To state a claim under that statute, a plaintiff "must allege that: (1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system [or leaving an artificial or prerecorded message] and (3) without prior consent of the recipient." *Barr v. Macys.com, LLC*, No. 22-CV-07867, 2023 WL 6393480, at *4 (S.D.N.Y. Sep. 29, 2023) (cleaned up). While Cruz alleges that Amex called his cell phone without his consent (*see* Compl. ¶¶ 70, 72), his allegation that Amex used an automatic dialing system to do so is entirely conclusory (*see id.* ¶ 71). Cruz also cannot satisfy the second prong of this test by alternatively alleging that Amex left artificial or prerecorded messages, since he further alleges that Amex did not leave any voicemails. (*See id.* ¶ 73). Cruz thus fails to state a plausible claim for relief under the TCPA.

**E. Leave to Amend**

As the Court has previously ordered, Cruz is granted leave to amend his complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally.

Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.”). Cruz may file an amended complaint within four weeks of the date of this Opinion and Order. Cruz may also file a letter within that time indicating that he does not plan to amend his complaint, at which point the Court will enter final judgment, permitting an appeal to the United States Court of Appeals for the Second Circuit. Failure to file an amended complaint or this letter within that time will result in entry of final judgment of dismissal.

## IV. Conclusion

For the foregoing reasons, American Express's motion to dismiss is GRANTED. Cruz is granted leave to amend his complaint, provided that any amended complaint must be filed within four weeks of the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 64.

SO ORDERED.

Dated: October 22, 2026
New York, New York

J. PAUL OETKEN
United States District Judge